| 78  451 |
| 179s 209 |

### James L. Hight and Edward L. Hight v. John W. Walker, Ex'r.

1. ASSUMPSIT—*For Money Received from Property Unlawfully Sold.* —A person who knowingly receives the proceeds of property unlawfully sold by another, may be compelled to account therefor to the owner in an action for money had and received.

Assumpsit, for money had and received. Trial in the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the November term, 1897. Affirmed. Opinion filed June 3, 1898. Rehearing denied November 29, 1898.

JOHNS & HOUSUM, attorneys for appellants.

MILLS BROTHERS, attorneys for appellee.

MR. JUSTICE GLENN delivered the opinion of the court.

This was an action of assumpsit, brought by appellee as executor of the will of David Oxer, deceased, against appellants, to recover $1,250, proceeds of the sale of corn raised on the David Oxer estate, and set apart to pay the rent on such estate, appellants having received such proceeds with knowledge of such facts. The declaration contains the common counts, to which the defendants pleaded non-assumpsit. Issues being joined, the case was tried by a jury. There was a verdict for plaintiff for $1,250, upon which judgment was rendered, and the defendants appealed.

It appears from the evidence that John W. Walker was executor of the will of David Oxer, deceased, and as such

had leased a farm belonging to the estate to one Cravens for the season of 1895 for the sum of $1,250, to be paid January 1, 1896. The corn in controversy was raised on this farm, and during the season · of 1895. Walker was engaged in the business of buying and shipping grain at Walker's Station, on the Illinois Central railroad, owning an elevator and cribs at that point in which he stored corn belonging to himself and corn belonging to others deposited for storage. He charged and received compensation for the corn on storage, but mingled his corn and that of depositors in a common mass, so that when the depositor called for his corn, or gave an order to sell it, the number of bushels deposited would be taken out of the elevator and disposed of as required by the depositor.

In the fall of 1895, Cravens, the tenant, in order to secure the rent, arranged with Walker to deposit in the elevator and cribs, of the corn raised on the demised premises, sufficient to pay the rent, with the understanding that when the corn was sold Walker should take the rent out of the proceeds. Under this arrangement 5,205 bushels of corn were placed on deposit in the elevator and cribs in the fall of 1895 and early spring of 1896 with Walker, to secure the rent of $1,250 by Cravens and his tenant, Landrine. Cravens was to have, if he desired, until July 1, 1896, to sell the corn. This corn was mixed with other corn when received, the greater portion of it being placed in the elevator, and soon shipped out. A portion of it was placed in the cribs; sufficient corn was reserved in the cribs to meet this and other deposits.

The appellants were bankers at Macon, near Walker's Station, with whom Walker kept an account. He was in the habit of depositing his drafts with them for grain sold by him, and of drawing checks on them for grain purchased and for other purposes. His account becoming largely overdrawn in the early spring of 1896, J. L. Hight, one of the appellants, urged him to make his balance good, and asked him whether he could not sell corn to raise what he owed them. Walker testifies, " I told J. L. Hight that I did not

have much of my own that was paid for, but there was considerable corn on deposit. He said money matters were pretty tight, I would have to do something. Could I not ship out the corn? I told him I could ship it out, but the corn was not priced, and as it came due, or as they sold it, I could ship it out, if he (Hight) would pay for it. I waited for an answer a few minutes and said : ' What shall I do about it?' He said, ' You had better go ahead and ship out the corn.' I told him the Oxer corn was part of the corn and would have to be paid for by the first of July. I told him several times about the rent, and that the corn was the rent of the Oxer place, and they said better go ahead and ship it out. They did not say yes, they would pay for it, but ' Go ahead and ship it out.' "

Walker, the appellee herein, soon after this conversation commenced shipping the corn in large quantities and sold it, the drafts therefor being deposited with appellants, who, collected the money thereon.

Appellants deny that they agreed to pay for corn appellee had on deposit, including the Oxer corn, although they admit it was mentioned in the conversation had between the parties about shipping out the corn. E. L. Hight, who was present at the time of this conversation, corroborates J. L. Hight in his version of it. They say that Walker did offer to ship and sell the corn on deposit, if they would pay the owners, and that they declined to do so, and only wished him to sell what belonged to him and give them the proceeds.

That the corn deposited by Craven under an arrangement with Walker that when it was sold sufficient of the proceeds to pay the rent for the Oxer farm for the season of 1895 should be turned over to Walker was shipped and sold, and the proceeds deposited with appellants, stands uncontradicted. The question in dispute is whether appellants knew it was for rent corn and that when sold sufficient of the proceeds thereof was to be applied in paying the rent for the Oxer farm for the season of 1895, and whether they did so with the understanding they were to pay appellee as

executor of the will of David Oxer, deceased, therefor, by the first of July, 1896. It is admitted by J. L. Hight in the conversation with Walker, early in March, 1896, about shipping out the corn, that Walker insisted that they should pay for the corn left by Cravens to pay the rent for the Oxer farm; that he held it in store for that purpose. The corn was all shipped and sold but a small quantity by early in May, so appellants must have known they received the Cravens corn. Whether they agreed to pay Walker for it was a question for the jury. In the case of Hight et al. v. Sanner, 71 Ill. App. 183, the main questions of fact in dispute in this case were in dispute in that case, that is, " Whether the appellants received the money, knowing it was for corn belonging to depositors, and whether they did so with an understanding that they would satisfy the claims of depositors." In Sanner's case, in the trial court the jury, on these issues of fact, found against appellants, and the judge presiding refused to disturb the verdict, and entered judgment thereon for Sanner. From this judgment appellants appeal to this court. These questions have been passed on by two different juries, different *nisi prius* judges presiding at each trial, and also by this court, our predecessors presiding, each finding against appellants. Under these circumstances we do not think we would be warranted in disturbing the verdict of the jury in this case, because the finding is against appellants on these disputed questions.

It is insisted on behalf of appellants that the verdict of the jury is excessive. It appears from the testimony in the record that there was not less than 5,205 bushels of the Cravens corn delivered as security for the rent of the Oxer farm. This amount at twenty-four cents gives substantially the amount $1,250, the damages assessed by the jury for appellee.

It is claimed by appellants' counsel that this suit is improperly brought in the name of appellee, as the executor of the will of David Oxer, deceased, and the money derived from the sale of the Cravens corn delivered to him to pay the rent did not belong to him as such executor. As

we have said, the arrangement made between Cravens and appellee when the Cravens corn was delivered, was that when it was sold, sufficient of the proceeds to pay the rent for the Oxer farm should be retained by appellee. The corn was delivered to appellee under this arrangement. The only matter reserved by Cravens was to name the date it should be sold, before July 1, 1896. It is not claimed any tortious act was committed with reference to this corn by either appellants or the appellee. This action is grounded on a contract. Appellants agreed that if appellee would ship out the corn Cravens had delivered to him to pay the rent due for the Oxer farm, and deposit the proceeds with them, they would pay it to him. Under this arrangement the corn was shipped and sold and the proceeds deposited with appellants. Under such circumstances this court held, in the case of Hight et al. v. Sanner, there could be a recovery, and we are not disposed to depart from such holding.

There is an instruction not numbered in the abstract, given on behalf of appellee, to which objection is made. The objection does not seem to us to be well taken. It simply limits the right of recovery to the amount of rent due, provided the value of the corn was equal to or greater than the amount of the rent due. If the value of the corn was less than the amount of rent due, the plaintiff's right of recovery was limited to the value of the corn. When the instructions asked on behalf of appellants, and refused by the trial court, are read in connection with those given, it is apparent the court was justified in refusing them. The judgment of the Circuit Court will be affirmed.